UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JODI A. HOWELL,

      Plaintiff,

      v.

THE BUCKEYE RANCH, INC., et al.,

      Defendants.

Case No. 2:11-cv-1014
JUDGE GREGORY L. FROST
Magistrate Judge Mark R. Abel

## OPINION AND ORDER

This matter is before the Court for consideration of Defendants' motion for summary judgment (ECF No. 44), Plaintiff's memorandum in opposition (ECF No. 53), and Defendants' reply memorandum (ECF No. 56). For the reasons that follow, this Court finds the motion well taken in part.

### I. Background

Defendant The Buckeye Ranch ("Buckeye Ranch") is a non-profit organization that provides services for children at various locations throughout Ohio. Many of these children are either deaf or hearing impaired, suffer from mental health issues, have substances abuse issues, or are juvenile sex offenders. Plaintiff, Jodi Howell, is a female who began working for Buckeye Ranch at its Argo House location on November 10, 2008. Howell's position was as Youth Leader, which largely entailed monitoring the activities of residents of Argo House and transporting the children to counseling appointments, home visits, and special weekend outings to places such as an amusement park.

From early on in her employment at Argo House, Howell was unhappy with the way the enterprise was run and with her co-workers. She consistently perceived the children she

supervised and the adults with whom she worked as disrespecting her.  Howell reported some of the alleged offensive conduct to the appropriate Buckeye Ranch individuals, while she did not report other alleged incidents.  Eventually, Howell took administrative leave with pay because she was purportedly too stressed to work and filed a charge with the Ohio Civil Rights Commission.  After a temporary transfer to another position was arranged, Howell returned to work in October 2009.  She lasted for approximately twelve hours in her temporary position before she again took leave.  Combining leave under a short term disability plan and the Family Medical Leave Act ("FMLA"), Howell remained off work until January 31, 2010.  Throughout this period, Howell periodically reported new allegations of harassment that Buckeye Ranch then investigated.  She had also applied for long-term disability benefits.  Howell's application for long-term disability benefits proved unsuccessful, and she never returned to working for Buckeye Ranch.

Howell subsequently filed the instant action on November 10, 2011.  (ECF No. 2.)  In her complaint, she asserts federal claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. for hostile work environment (Count One) and retaliation (Count Two) and state law claims for discrimination/hostile work environment in contravention of Ohio Revised Code § 4112 (Count Three), discrimination/retaliation in violation of Ohio Revised Code § 4112 (Count Four), intentional infliction of emotional distress (Count Five), and negligent hiring and negligent retention (Count Six).  (ECF No. 2 ¶¶ 29-65.)  Defendants have filed a motion for summary judgment on all of Howell's claims.  (ECF No. 44.)  The parties have completed briefing on the motion, which is ripe for disposition.

## II.  Discussion

### A.  Standard Involved

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, which must set forth specific facts showing that there is a genuine issue of material fact for trial. *Id.* (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52).

### B. Analysis

#### 1. *Federal Claims*

Howell asserts two federal claims in this litigation, both under Title VII and both against only Buckeye Ranch. Her discrimination claim in Count One is for a hostile work environment. To prove discrimination in the form of a hostile work environment, Howell must show that

> (1) she was a member of a protected group, (2) she was subjected to unwelcome

3

> harassment, (3) the harassment was based upon the employee's protected status, such as race or gender, (4) the harassment affected a term, condition, or privilege of employment, and (5) the defendant knew or should have known about the harassing conduct but failed to take any corrective or preventive actions. *Williams v. Gen. Motors Corp.,* 187 F.3d 553, 560-61 (6th Cir. 1999) (discussing the requirements for proving a hostile work environment claim based upon gender); *Moore v. KUKA Welding Sys. & Robot. Corp.,* 171 F.3d 1073, 1078-79 (6th Cir. 1999) (setting forth the elements of a prima facie case for a claim of a hostile work environment based upon race).

*Howard*, 70 F. App'x at 281 (citing *Farmer v. Cleveland Pub. Power*, 295 F.3d 593, 604-05 (6th Cir. 2002)). The Sixth Circuit has further explained that a Title VII plaintiff must show that

> the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment . . . . Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment–an environment that a reasonable person would find hostile or abusive–is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation.

*Virgilio v. Potter*, 59 F. App'x 678, 681 (6th Cir. 2003) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-23 (1993)) (internal quotes and citations omitted); *see also Howard*, 70 F. App'x at 282.

The touchstone of a hostile work environment claim is thus proof that "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' . . . that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986)). There is both a subjective and an objective prong to this standard. In other words, "the conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and the victim must subjectively regard that environment as abusive." *Black v. Zaring Homes*, 104 F.3d 822, 826 (6th

4

Cir. 1997) (citing *Harris*, 510 U.S. at 21-22).  The question before the Court is thus whether a reasonable person would have found Howell's work environment to be hostile or abusive.

A court considering such a question must consider various factors including "[t]he frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Harris*, 510 U.S. at 23.  Although the work environment as a whole must be viewed by a court, including all alleged acts of harassment or abuse, if such acts are irregular and sporadic rather than continuous and frequent, it is much more difficult to prove a hostile work environment claim.  *See id.*  This is because "not all workplace conduct that may be described as 'harassment' affects a 'term, condition, or privilege' of employment within the meaning of Title VII."  *Meritor Sav. Bank, FSB*, 477 U.S. at 67.  For example, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.' "  *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal citations omitted).

Buckeye Ranch argues that, even necessarily construing the evidence in a light most favorable to Howell, the Court should conclude that the conduct complained of does not rise to the level of a hostile work environment.  According to Buckeye Ranch, the various incidents about which Howell complains are not connected to her gender and are so lacking in severity that they could hardly be regarded under the totality of the circumstances as permeating the workplace with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to affect Howell as she claims to have been affected.  Rather, Buckeye Ranch suggests that Howell exhibits a heightened sensitivity to any type of physical contact as a result of unspecified acts of molestation that she believes may have occurred when she was a child.

This Court agrees with Buckeye Ranch that no reasonable factfinder could conclude that many of Howell's allegations present gender-based and severe conduct.  Howell simply fails to present any link between her gender and the various names Argo House workers allegedly called her.  Such name calling in fact arguably constitutes the exact sort of behavior that while boorish, is not actionable based on its failure to connect to her gender.  Many of Howell's other allegations are essentially purely speculative.  For example, she cites supervisor Ron Eiland as having engaged in impropriety, but she does not know what he said or if anything he said was in any way sexual.  Instead, Howell simply assumes that Eiland was talking about her to others and that it was sexual because he and others would look at her as she entered a room and laugh.  It appears that many of the workers at Argo House simply either did not like Howell or enjoyed taunting and teasing her because she took such offense at any slight, whether real or only perceived.  In sum, the bulk of Howell's allegations present at best only general idiocy by various Buckeye Ranch employees that was unrelated to her gender and was not severe enough to change her working conditions.

There are some incidents that are, however, tainted with a possible if not probable gender-related animus.  One former co-coworker, Jimmy Tyson, allegedly exposed himself to Howell, pulled on her underwear, touched her breast, and asked her to cook him a chicken while wearing a thong.  At least some of the other remarks made to her, such as one comment about jumping into bed, could be regarded as tied to her gender.  Whether these incidents are severe enough to constitute more than simple teasing, offhand comments, or isolated incidents that do not amount to discriminatory changes in the terms and conditions of Howell's employment is debatable.

This Court need not provide a conclusive answer to that issue because, even assuming

*arguendo* that the various incidents that Howell alleges occurred did in fact take place and that these acts present harassing conduct based on her gender, Buckeye Ranch is still entitled to summary judgment.  This is because even if Howell satisfies the first four prongs of the Title VII *prima facie* case, she fails to satisfy the fifth prong: that Buckeye Ranch knew or should have known about the harassing conduct but failed to take any corrective or preventive actions.

The Sixth Circuit has explained that "[t]he act of discrimination by the employer in [a hostile work environment case] is not the harassment, but rather the inappropriate response to the charges of harassment."  *McCombs v. Meijer, Inc.*, 395 F.3d 346, 353 (6th Cir. 2005).  Thus, "when the allegations of sexual harassment involve a coworker and the employer has fashioned a response, the employer will only be liable 'if its response manifests indifference or unreasonableness in light of the facts the employer knew or should have known.' "  *Id.*  *See also Mast v. IMCO Recycling of Ohio, Inc.*, 58 F. App'x 116, 119 (6th Cir. 2003) ("If the harasser was merely the plaintiff's co-worker, the employer will be liable only where the plaintiff can demonstrate that the employer knew or should have known of the harassment and failed to take appropriate remedial action." (citing *EEOC v. Harbert-Yeargin, Inc.,* 266 F.3d 498, 518 (6th Cir. 2001)); *Courtney v. Landair Transp., Inc.,* 227 F.3d 559, 564-65 (6th Cir. 2000)).

Notably, the misconduct to which Howell points involves her co-workers who, even if they at times assumed a role of directing administrative duties, did not exercise significant control over Howell's employment.  The one supervisor to which she directs this Court is Eiland, but, as noted, her allegations concerning him are speculation based on assumptions.  What Howell may or may not have reported to McShan Smith is unhelpful to her claim given that she concedes in her deposition testimony that she generally cannot recall what she told Smith but is certain she did not tell Smith that she was touched on her breasts and buttocks.  Howell's failure to report alleged

sexual harassment to supervisors is important in light of her attempt to paint supervisors as unresponsive to her asserted plight. Buckeye Ranch cannot be charged with failing to remedy issues that they had no reason to know existed.

Buckeye Ranch points to its anti-harassment policy and its complaint procedure as evidence of its attempt to prevent harassment. Howell was aware of the policy and partially availed herself of the complaint procedures, albeit often in a sporadic and belated manner. Once Buckeye Ranch learned of Howell's allegations, it conducted an investigation and took appropriate measures. After Howell reported various allegations of wrestling and horseplay to Eiland, for example, he instructed the staff to stop this physical conduct. The conduct did stop. Director of Human Resources Kim Bruce also addressed each allegation that Howell periodically made during the course of Bruce's investigation. This resulted in the removal and demotion of various individuals from Argo House. Three comments are necessary in that regard. First, Eiland was disciplined for failure to report horseplay, not for failure to report sexual harassment. Second, it was only Tyson's resignation prior to the conclusion of the investigation that prevented the imposition of disciplinary action on him. Third, if Howell had returned to work, even she would have been disciplined for her involvement in some incidents of horseplay. Howell has thus failed to introduce evidence of an insufficient response. She may dislike some or all of the results of these investigations, but this does not mean that Buckeye Ranch was indifferent and acted unlawfully. Rather, the remedial steps undertaken are sufficient to preclude Buckeye Ranch's liability on the hostile work environment claim.

The instant case therefore echoes the relevant portion of *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321 (6th Cir. 2008), in which the Sixth Circuit upheld summary judgment against one of four plaintiffs for failure to establish a *prima facie* case of a hostile work environment based on the

fact that after learning of the harassment, that plaintiff's employer "promptly launched an investigation, suspended [the harasser], and then fired him." *Id.* at 344. The same core reasoning proves dispositive here. There was an investigation followed by disciplinary action where possible; interim suspensions were unnecessary to protect Howell because she was on leave during the course of the investigation. The fact that Howell did not get what she wanted—which was to have *everyone* at Argo House replaced, including all the female employees—does not mean that Buckeye Ranch failed in its duty under Title VII.

Buckeye Ranch is therefore entitled to summary judgment on the hostile work environment claim set forth in Count One. This leaves only one federal claim, Howell's Count Two claim for retaliation.

Under Title VII, it is an unlawful employment practice for an employer "to discriminate against any [employee] with respect to the [employee's] compensation, terms, conditions, or privileges of employment, because of such [employee's] race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). It is considered an unlawful employment practice if an employer discriminates against an employee because "the [employee] has opposed any practice made an unlawful employment practice by [Title VII], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). The employee has the burden of proving a *prima facie* case that the employer unlawfully retaliated against the employee.

To establish a *prima facie* case of unlawful retaliation under Title VII, Howell must present by a preponderance of evidence that: (1) she was engaged in a protected activity; (2) Buckeye Ranch knew that Howell was engaged in this protected activity; (3) Buckeye Ranch subsequently took an employment action adverse to Howell; and (4) a causal connection between the protected

9

activity and the adverse employment action exists.  *Abbott v. Crown Motor Co., Inc.*, 348 F.3d 537, 542 (6th Cir. 2003) (citing *Strouss v, Michigan Dep't of Corr.*, 250 F.3d 336, 342 (6th Cir. 2001); *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000)). The Sixth Circuit has held after a plaintiff has proved the existence of a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse action.  *Abbott*, 348 F.3d at 542 (citing *Nguyen,* 229 F.3d at 562).   If the defendant can meet this burden, then the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the defendant's proffered reason was mere pretext.  *Abbott*, 348 F.3d at 542 (citing *Manzer v. Diamond Shamrock Chems. Co.,* 29 F.3d 1078, 1084 (6th Cir. 1994)).   If the plaintiff demonstrates that the defendant's proffered reasons were pretextual, then the factfinder may infer unlawful retaliation. *Abbott*, 348 F.3d at 542.

Buckeye Ranch correctly argues that Howell has not presented either a *prima facie* case or a genuine issue of material fact in relation to her retaliation claim.   Howell posits that Buckeye Ranch forced her into a less desirable job that led to her job loss by failing to provide her with another position.   The undisputed evidence indicates only that Buckeye Ranch provided her with a number of options, including a temporary transfer to another unit.   Howell agreed to the transfer only if she could maintain her four-day work week, despite the positions in that unit requiring a five-day work week.   Buckeye Ranch accommodated her request, which would have resulted in a temporary, two-week assignment for Howell until she would be placed at Phoenix House, a new all-female facility that Buckeye Ranch was opening.   Howell did not incur a loss in wages or other benefits related to the temporary reassignment.   As noted, Howell worked in that temporary position for approximately twelve hours before taking leave.   When her FMLA leave expired, Howell could either return to work or not.   She elected the latter route, without requesting an

10

extension of her leave.  Buckeye Ranch treated Howell's inaction as a resignation and terminated her employment.

These events present a scenario in which Howell failed to suffer an adverse employment action.  Although Howell asserts that Human Resources encouraged her to look into long term disability benefits, she has not presented evidence that this correlated with an actual withdrawal of the Phoenix House position.  Rather, she subjectively characterizes the invitation to look into disability benefits as revocation of the Phoenix House position.  Moreover, Howell has also failed to demonstrate a causal connection between losing her job and her opposition to alleged discrimination.  Accordingly, Buckeye Ranch is also entitled to summary judgment on Count Two.

### 2. *State Law Claims*

Having disposed of Howell's two federal claims, the Court is left with her remaining state law claims constituting Counts Three through Six.  It is not mandated that this Court entertain these state law claims, and in fact precedent teaches that this Court presumptively should not address the state law claims. *See Jackson v. Heh*, 215 F.3d 1326, 2000 WL 761807, at *8 (6th Cir. 2000) (unpublished table decision) (referencing 28 U.S.C. § 1367 and stating that "[w]here, as here, a federal court has properly dismissed a plaintiff's federal claims, there is a 'strong presumption' in favor of dismissing any remaining state claims unless the plaintiff can establish an alternate basis for federal jurisdiction." (citing *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1255 (6th Cir. 1996))).  Howell has failed to assert any justification or alternative basis for exercising jurisdiction over Counts Three through Six should the Court grant summary judgment to Buckeye Ranch on her federal claims.

Regardless of this omission, this Court in making the decision whether to exercise

11

supplemental jurisdiction shall consider and weigh "several factors, including the 'values of judicial economy, convenience, fairness, and comity.' " *Gamel v. City of Cincinnati*, 625 F.3d 949, 951–52 (2010) (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). *See also Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). When a district court dismisses all claims over which it had original jurisdiction, the balance of considerations is likely to weigh in favor of declining to exercise supplemental jurisdiction. *Gamel*, 625 F.3d at 952; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues.").

To assess the factors of judicial economy, fairness, and comity, this Court is guided by several specific considerations. Among these are (1) whether the Court should avoid needless state law decisions as a matter of comity, (2) whether the Court, in its disposition of a federal claim resolved a related state-law issue, (3) whether similar predicate factual findings are necessary to resolve both the state and the federal claims, (4) whether the Court has expended significant time and resources, (5) whether dismissal or remand will result in duplicative litigation, (6) whether the matter has been on the Court's docket for a significant time, (7) whether the parties have completed discovery, (8) whether Howell has abandoned all federal claims at a late stage of the proceedings, and (9) whether a summary judgment motion has been extensively briefed and is ripe for review. *Fox v. Brown Memorial Home, Inc.,* 761 F. Supp. 2d 718, 723–24 (S.D. Ohio 2011) (citing various Sixth Circuit cases identifying these factors).

Some of these factors favor this Court's exercise of supplemental jurisdiction. For example, this case has been pending in this Court for approximately seventeen months, the parties

have completed discovery, and they have also briefed summary judgment motions. There is also some interest in avoiding duplicative litigation. Perhaps the best argument in favor of retaining jurisdiction over the state law claims is the fact that this Court would employ substantially the same analysis for the Count Three discrimination/hostile work environment claim under Ohio Revised Code § 4112 and the Count Four discrimination/retaliation claim under Ohio Revised Code § 4112 that it applied above, at least in regard to Buckeye Ranch. But weighing against exercising supplemental jurisdiction is that Counts Three and Four, while involving some overlapping parties and some overlapping analysis as Counts One and Two, also include additional defendants that will necessitate analysis involving state law issues. Additionally, Counts Five and Six present pure state law issues unaddressed by today's analysis. The interest in avoiding needless decisions on state-law issues as a matter of comity weighs heavily against supplemental jurisdiction. Because today's federal-claim analysis does not fully inform the resolution of the remaining state-law claims, it cannot be said that judicial economy or convenience weigh in favor of adjudicating the remaining claims.

Given the foregoing and in light of the presumption against exercising supplemental jurisdiction over Howell's state law claims, the Court declines to entertain these claims. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) ("If the federal claims are dismissed before trial ... the state claims should be dismissed as well."); *Brandenburg v. Housing Auth. of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001) (stating that "the usual course is for the district court to dismiss the state-law claims without prejudice if all federal claims are disposed of on summary judgment"). This Court emphasizes that it expresses no opinion as to the merits of any state law claim.

13

### III.  Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** Defendant's motion for summary judgment.  (ECF No. 44.)   This Court enters summary judgment in favor of Buckeye Ranch on Counts One and Two and dismisses without prejudice Counts Three through Six.   The Clerk shall enter judgment accordingly and terminate this action on the docket records of the United States District Court for the Southern District of Ohio, Eastern Division.

**IT IS SO ORDERED**.

> /s/ Gregory L. Frost
> GREGORY L. FROST
> UNITED STATES DISTRICT JUDGE